2322-CC00862

IN THE CIRCUIT COURT FOR THE CITY OF ST. LOUIS
TWENTY-SECOND JUDICIAL CIRCUIT
STATE OF MISSOURI

| | |
|---|---|
| HAROLD GILLENWATER, individually and on behalf of all others similarly situated, Plaintiff, <br><br> vs. <br><br> SAFE HOME SECURITY, INC. and SECURITY SYSTEMS, INC. | **Case No.** <br><br> Division No. <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION PETITION

COMES NOW, Plaintiff, HARROLD GILLENWATER ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through undersigned counsel, upon personal knowledge of the facts pertaining to him and on information and belief based upon the investigation of counsel as to all other matters, and brings this class action complaint against SAFE HOME SECURITY, INC. and SECURITY SYSTEMS, INC. ("Defendants") as follows:

### NATURE OF CASE

1.      This case is about Defendants' practices of using unfair, deceptive, unethical, unlawful, and/or misleading business practices to trap individuals into several year contracts for home security services; notably Defendant's failure to disclose to clients including elderly ones as the case of plaintiff, during high pressure sales calls pressuring call recipients to enter into a 60-month contract for Defendants' security services – even though, upon information and belief, by doing nothing, their contract would automatically renew for only 12 months. Defendants also promise to Plaintiff and Class Members to provide new security monitoring equipment to them if they enter an Agreement, but fail to provide the new security monitoring equipment after these agreements are signed. When the service stops working with the old equipment, Defendants refuse

1

to cancel the Agreement at the customer's request and continues to charge the customer monthly. If the customer stops paying, Defendants threaten to put a lien on the customers' homes if the customer does not make all payments to date. The only option Defendants give to the customer to cancel the Agreement is if the customer immediately pays the remainder of the contract, which is an illegal penalty, which can be up to approximately $4,000.00 ($67.99 times the number of months remaining under the 60-month contract). Had the customer not been pressured into the new contract, the penalty would have only been (although still egregious, approximately $800.00).

2.      These willful omissions, misrepresentations, and/or unlawful and/or unethical acts and/or failures to act are likely to cause confusion and do, in fact, cause confusion, often leaving customers unwittingly bound to multi-year contracts with these entities and/or with their credit scores tarnished.

3.      Even for customers that learn the true nature of Defendants' scams, it is often too little, too late.  By ensuring their contracts are next to impossible to cancel and/or, with respect to Defendants cancellation is only permitted as follows:

> CANCELLATION: Client may cancel prior to completion of primary or renewal term upon receipt of ninety percent (90%) of the unpaid contract balance. All cancellation requests must be in writing.

4.      Defendants have successfully trapped customers in multi-year contracts worth thousands of dollars.

## PARTIES, JURISDICTION, AND VENUE

5.      Defendant, SAFE HOME SECURITY, INC., ("Defendant" and/or "Safe Home"), is a Connecticut corporation with its principal place of business located at 1125 Middle Street #201, Middletown, Connecticut 06457.  Safe Home was incorporated in 1988. Safe Home's registered agent for service of process in Connecticut is Incorp Services, Inc. 6 Landmark Square,

4th Floor, Stamford, CT 06901. SAFE HOME SECURITY, INC. is a corporation that sells, installs, services, and monitors home alarm and security systems in Missouri and other states.

6. Defendant SECURITY SYSTEMS, INC. is a for-profit Connecticut corporation with its usual and regular place of business at 1125 Middle Street, Middletown, Connecticut 06457. SECURITY SYSTEMS, INC. is a corporation that sells, installs, services, and monitors home alarm and security systems in Missouri and other states. SECURITY SYSTEMS, INC.'s registered agent for service of process in Connecticut is Incorp Services, Inc. 6 Landmark Square, 4th Floor, Stamford, CT 06901.

7. SAFE HOME SECURITY, INC. and SECURITY SYSTEMS, INC. are corporations that jointly sell, install, service, and monitor home alarm and security systems in Missouri and other states.

8. Defendants are both a non-resident of the state. The contract entered into was entered into in the City of Saint Louis where Plaintiff's home and the non-functioning security system was installed and is stopped functioning.  The City of St. Louis is where Defendants targeted Plaintiff to sign a new contract for 60 months.  It is also where the home is located and is the home where Defendants threaten to place a lien. The City of Saint Louis is also where the new equipment was supposed to be sent and to where the security monitoring service was supposed to monitor Plaintiff's home but does not function. For the forgoing reasons, Venue is proper under 508.010.1(4) in this Court as Defendants are non-residents of this State and there is personal jurisdiction over each Defendant, independent of each other Defendant. Additionally, Venue is proper in this Court because each of the foregoing transactions took place in the City of Louis.

## FACTUAL BACKGROUND

9. Defendants provide home security monitoring services to consumers

in exchange for a monthly fee over a fixed term, usually three or five years. Consumers' contracts with Safe Home automatically renew for an additional term of a month or a year unless a consumer cancels in writing more than 60 days before the end of the contract term. See, e.g., https://www.mass.gov/doc/commonwealth-v-safe-home-security-consent-judgment/download.

10.    The Defendants engages in the following unfair and/or deceptive business practices:

a.    Knowingly offering, selling, leasing, or renting security monitoring system equipment and services to Plaintiff and the Class Members that is defective or that does not otherwise work, operate, or function;

b.    Collecting, charging, requesting, or billing for any fee, charge, surcharge, cost, or expense to Plaintiff and/or Class Members for services provided during any time period when the Plaintiff and/or Class Members' account was not functioning or was inactive, suspended, terminated, or was not being monitored by a home security system – including when the security monitoring equipment and/or service was not functioning or otherwise did not continue to provide security monitoring services.

c.    Promising to provide security monitoring services to Plaintiff and the Class and failing to provide those services.

d.    Moreover, Safe Home (or its third-party contractors) regularly tests its consumers' home security systems to determine if it is properly functioning and capable of sending signals to the central monitoring station. Even when Safe Home knew or should have known that a consumer's system was not properly sending signals to the central station, it continued to bill, renew, and collect debts on those accounts.

e.    Using high pressure sales tactics to enroll Plaintiff and the Class Members into

entering an Agreement;

      f.      Failing to disclose to clients with an automatic renewal provision in their agreement that they do not have to agree to a new 60-month contract to continue to receive services;

      g.      Failing to disclose to clients with an automatic renewal provision in their agreement that their contract will automatically renew for only 12 months if they do nothing but if they enter into a new contract, they will be entering into a 60-month contract.

      h.      Failing to inform Plaintiff that Defendants would not provide security monitoring service for the duration of the 60-month security monitoring service period;

      i.      Promising to provide new security monitoring equipment to Plaintiff and the Class Members if they enter an Agreement and failing to provide the new security monitoring equipment.

      j.      Failing to disclose that Defendants would not provide new security monitoring equipment when the Agreement was entered into;

      k.      Failing to honor any warranties provided by Defendants to Plaintiff and the Class Members;

      l.      Failing to timely cancel Agreements when Plaintiff and the Class Members request cancellation;

      m.      Ignoring consumers attempting to cancel their agreements and misinforming consumers of their rights.

      n.      Assessing and/or charging a penalty to Plaintiff and the Class Members who ask to cancel their service.

      o.      Threatening to put a lien on Plaintiff's home if he did not bring his account up to date by paying for services not rendered or if he did not buy out his contract plus previous bills overdue.

11.     If a customer does not make payment on the account, the statements not only include charges for the account balance, but also previous balance, processing fees, late fees, and finance charges.

12.     At some point, Safe Home Security starts to send threatening letters for a purported debt owed by the consumer who does not pay the invoice for services. In the threatening letter, Safe Home Security represents that: "[a]ll accounts are reported to multiple credit bureaus monthly." To "avoid future delinquent reporting as well as additional late and finance charges," Safe Home Security advised Plaintiff to "please remit payment immediately." This happened to Plaintiff.

13.     Safe Home has engaged in these practices for more than a decade.  In fact, The Connecticut Office of the Attorney General initiated a lawsuit against Safe Home Security Inc. in 2007 after numerous complaints about the security company.[1]

14.     Consumers complained to Connecticut that the alarm and monitoring systems were often defective or negligently installed, that technicians were not regularly available and missed appointments, and that long-term contracts did not comply with Connecticut law and were renewed automatically without giving consumers an opportunity to cancel the contract. [2]

15.     The state reached a settlement with the company in 2014 requiring payments in customer restitution, a civil penalty to the state, and injunctive provisions relating to Safe Home's compliance with auto-renewal statutes, debt collection statutes and statutes relating specifically to companies engaged in the residential alarm business.[3]

---

[1] https://portal.ct.gov/AG/Press-Releases/2022-Press-Releases/Attorney-General-Tong-Files-Stipulation-Judgment-Against-Safe-Home-Security.
[2] *Id.*
[3] *Id.*

16.     Despite that settlement, the state continued to receive hundreds of complaints regarding the company's business practices.[4]

17.     The Office of the Attorney General filed a motion for contempt in 2019 claiming that the company continued to block consumers from terminating long-term contracts, misrepresented the terms of contracts to consumers, charged consumers for services when the consumers' alarm systems weren't working, and other conduct.[5]

18.     Attorney General William Tong at the time warned consumers to be wary of doing business with Safe Home Security.[6]

19.     A "new Judgment Stipulation filed on March 8 represents a settlement between the State and Safe Home to resolve claims brought by the State in its motion for contempt. When it is entered by the Court, the judgment will require Safe Home Security to pay $1 million within ten months, with the remaining $4 million suspending pending their compliance with the judgment.[7] The judgment includes additional injunctive relief to that which was ordered in 2014 and requires Safe Home Security to hire an independent monitor to review their compliance for a period of five years. The judgment further requires Safe Home to establish a dedicated email address to receive and track complaints, and to make a good faith effort to resolve all unresolved complaints filed with the Office of the Attorney General."[8]

20.     Upon information and belief, complaints show that Safe Home Security sales agents many times intentionally target customers that are over the age of 65, are infirm, or have diminished mental capacities.

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

21.     Once a customer becomes enrolled in this program, the customer cannot get out. When customers is near the end of their sixty (60) month contract, Defendants contact Plaintiff and the Class Members to encourage them to enter into new multiyear contracts with a promise of receiving new security equipment with no intention of actually sending new equipment to Plaintiff – even at the request of their own service people fixing non-functioning old equipment.

22.     When a customer tries to cancel the program, Safe Home Security does not do as requested, trapping Plaintiff. This happened to Plaintiff.

23.     Plaintiff signed up for security monitoring with Defendants in or about 2015 in a five (5) year contract, which would automatically renew on the fifth year.  Instead of letting the Contract autorenew under the contractual terms, Defendants reached out to Plaintiff, calling him repeatedly over and over and over, pressuring him to sign a new 60-month contract in exchange for new and additional security equipment.

24.     Succumbing to the high-pressure sales tactics, Plaintiff signed a new 60-month contract.

25.     Although Plaintiff signed the new 60-month contract, Defendants unlawfully, unfairly, and unethically failed to send the new equipment.

26.     Also, unbeknownst to Plaintiff, Defendants failed to disclose to him that in October of 2021, the security system would stop working.

27.     The security monitoring system stopped working in or about October of 2021.  As a result, Plaintiff reached out to Safe Home Security to seek assistance to get the security monitoring system working.

28.     Defendants sent out a service professional to analyze and diagnose the presenting issue.

29.     The service professional arrived and analyzed the presenting issue and determined that Plaintiff's system was not compatible with the new service.

30.     Although the service guy called Defendants to send new equipment that was compatible with the service, Defendants did not send the new equipment.

31.     Next, Defendants stopped paying the service person, so the service person notified Plaintiff that he will not help Plaintiff anymore.

32.     The security system service continues to not work, even to this day.

33.     Moreover, Safe Home (or its third-party contractors) regularly tests its consumers' home security systems to determine if it is properly functioning and capable of sending signals to the central monitoring station. Even when Safe Home knew or should have known that a consumer's system was not properly sending signals to the central station, it continued to bill, renew, and collect debts on those accounts, including those of Plaintiffs' and Class Members'.

34.     Despite several phone calls to Safe Home to attempt to work things out, Safe Home continues to bill Plaintiff each month even though Safe Home failed to provide functioning service.

35.     As a result of Defendant's actions and inactions, Plaintiff has decided to stop paying the bill, and the bills continue to arrive and accrue.

36.     Defendants are now threatening to place a lien on his home if he fails to pay for the $1,200 in outstanding bills for service he has not received. Defendants tell him that if he cancels, he not only owes the $1,200 but he also will owe an additional $2,500 to buy out the contract. When Client reminds Defendants that the service stopped working on October 2021, they offer to credit him $150, but that is all they are willing to do.

37.     Of note, Plaintiff always paid his bill on time until the security system stopped working, and Defendants failed to fix it.

38.     Despite talking to multiple people at Safe Home Security, the Safe Home Security people have not provided solutions for fixing his security service and have even started yelling at Plaintiff.  It is now 2023, and Plaintiff is still stuck in the contract for security service until 2025 despite the service not working since October 2021.

39.     Plaintiff wants the debt cleared, he wants out of his contract, and he wants compensation for the time he spent dealing with this issue and for the harassment he received. Plaintiff further wishes for his Plaintiff's attorneys to be compensated for the time and expenses they incurred in litigating this matter.

**DEFENDANT'S DECEPTIVE CONDUCT IS KNOWING AND INTENTIONAL**

40.     Such practices violate statutory and common-law prohibitions against the use of deceptive, misleading, unlawful, or unethical business practices in commerce. They also violate the security systems industry's own Code of Ethics and Standards of Conduct, which requires, among other things, that Members shall prohibit their Representatives from engaging in deceptive, misleading, unlawful, or unethical business practices. See, https://esaweb.org/wpcontent/uploads/2019/05/Code_of_Ethics.pdf for the Code of Ethics and Standards of Conduct for the standards and code.

41.     Each of the Defendants knows these types of sales practices are contrary to the law and established industry standards, yet knowingly continues such conduct. None of the Defendants have taken appropriate action to curb such conduct by their respective sales agents and/or account administrators.

42.     Each Defendant's conduct is knowing and intentional. At best, each Defendant is aware of such conduct by its sales agents and/or account administrators but does not take sufficient actions to stop them despite having the ability to do so. At worst, each Defendant knowingly

teaches and condones these actions by its agents. Each Defendant refuses to cancel the subscription despite knowing it used unfair, unlawful, deceptive, and otherwise wrongful business practices to enroll Plaintiff and the class in the subscription and/or renew/extend a no longer valid subscription.

43.     Defendants' conduct has not stopped, and will not stop, because each Defendant generates significant profits from its deceptive tactics. Every alarm account Defendants acquire through deceptive sales conduct creates a new revenue stream for Defendants, potentially for several years beyond the initial term of the new contract. Thus, the Defendants deceptive practices are designed to obtain as many accounts as possible through whatever means possible. On information and belief, such conduct has permitted each Defendant to bolster their financial reports and receive new credit and/or equity investments that otherwise might not be possible without the illegal sales conduct.

## CLASS ACTION ALLEGATIONS

44.     This action may be brought and properly maintained as a class action pursuant to the provisions of Rule 52.08 of the Missouri Rules of Civil Procedure and/or the Missouri Merchandising Practices Act, 407.025, individually and on behalf of the following classes:

> **All individual citizens of the State of Missouri who were promised but did not receive new security system equipment. ("False Promise Class ").**

> **All individual citizens of the State of Missouri who are unable to cancel the Safe Home Security, Inc. / Security Monitoring, Inc. monitoring program. ("Unable to Cancel Class").**

> **All individual citizens of the State of Missouri who have been billed and charged by Safe Home Security, Inc., but did not actually receive home security services from Safe Home Security, Inc. during one or more billing periods. ("No Service Class")**

(hereinafter the False Promise Class, the Unable to Cancel Class, and the No Service Class are collectively referred to herein as the "Class").

Excluded from the Classes are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or Defendants' parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) Any governmental entities and any instrumentalities, subdivisions, agencies thereof; (4) any person who executes and files a timely request for exclusion from the Class; (5) any person who has had their claims in this matter finally adjudicated and/or otherwise released; (6) the legal representatives, successors and assigns of any such excluded person; (7) counsel of record.

45.     **Numerosity**. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendants' records. Defendants have the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to plaintiff.

46.     It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

47.     **Commonality and Predominance**. There are questions of law and fact common to the Classes which predominate over any individual issues. Among the questions of law and fact

12

common to the Classes are, without limitation:

      a.      Whether Defendants used unfair and/or deceptive tactics to get customers to sign new security monitoring program agreements;

      b.      Whether Defendants have a uniform practice of making it impossible to cancel the home security system account;

      c.      Whether Defendants have a uniform practice of billing and charging Plaintiff and the class's accounts and not actually providing the services for which it claimed to provide;

      d.      Whether Defendants owed a duty to the class members under the applicable statutes and/or common law;

      e.      Whether Defendants made one or more material omission about the home security system;

      f.      Whether Defendants violated the Missouri Merchandising Practices Act, 407.010, *et seq.* by the practices described herein;

      g.      Whether Plaintiff is entitled to declaratory judgment;

      h.      Whether Plaintiff and the respective class members are entitled to an injunction prohibiting Defendants from engaging in deceptive trade practices as described herein and breaching its duty to Plaintiff and respective class;

      i.      Whether Plaintiff and the respective class members are entitled to damages;

      j.      Whether Plaintiff and the respective class are entitled to attorneys' fees; and/or

      k.      Whether Plaintiff and the respective class are entitled to costs.

      48.      **Typicality**. Plaintiff's claims are typical of the Class. As with members of the Classes, Plaintiff was scammed the same way as the other individual class members and was part of the same scheme. Plaintiff's interests coincide with, and are not antagonistic to, those of the

other class members.

49.     **Adequacy**. Plaintiff is an adequate representative of the Classes because Plaintiff fits within the class definition and Plaintiff's interests do not conflict with the interests of the Members of the Classes Plaintiff seeks to represent. Plaintiff is knowledgeable about the subject matter of this litigation, is passionate about this litigation personally, and will vigorously prosecute this action vigorously for the benefit of the entire Class. Plaintiff is represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as class counsel. Class counsel has litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class. Plaintiff and class counsel can fairly and adequately protect the interests of all of the Members of the Class. Plaintiff and his counsel are aware of no conflicts of interests between Plaintiff and absent Class members or otherwise. Plaintiff has or can acquire adequate financial resources to assure that the interests of the Classes will not be harmed.

50.     **Superiority of Class Action**. The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiff and members of the Classes have suffered irreparable harm as a result of Defendant's fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Class members would have no reasonable remedy and would continue to suffer losses, as Defendants continue to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint, and Defendants would be permitted to retain the proceeds from their continued violations of law. Further, individual

litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. There will be no difficulty in the management of this action as a class action. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendant's records and databases. Plaintiff is unaware of any difficulty likely to be encountered in the management of this case that would preclude its maintenance as a class action.

51. **Injunctive and Declaratory Relief.** Defendants have acted, and refused to act, on grounds generally applicable to the respective class, thereby making appropriate final injunctive relief with respect to the respective classes as a whole.

**COUNT I**
**BREACH OF CONTRACT, INCLUDING BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(ON BEHALF OF PLAINTIFF AND THE CLASS)**

52. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Petition as if fully set forth herein.

53. Plaintiff and Defendants contracted for security system monitoring *equipment*, as embodied in the Agreement attached as **Exhibit A** (the "Agreement"), including any documents incorporated by reference therein.

54. Similarly, Defendants and the Class Members contracted for security system monitoring *services*, their respective Agreement, including any documents incorporated by reference therein.

55. Upon information and belief, Defendants use a contract of adhesion, i.e., a standard form agreement, including any documents incorporated by reference therein when signing up Plaintiff and the Class Members.

56.     As indicated the Agreement, including any documents incorporated by reference therein, Defendants promised to provide new security monitoring equipment in exchange for entering a new contract.

57.     As indicated the Agreement, including any documents incorporated by reference therein, Defendants promised to provide the outlined security monitoring services in exchange for entering a new contract.

58.     As indicated the Agreement, including any documents incorporated by reference therein, Defendants promised to provide security monitoring services for 60-months.

59.     Defendants breached the terms of the Agreement, including any documents incorporated by reference therein, when it failed to provide the promised security monitoring *equipment* to Plaintiff and the Class.

60.     Defendants breached the terms of the Agreement, including any documents incorporated by reference therein, when it failed to provide the promised security monitoring *service* to Plaintiff and the Class.

61.     Defendants breached the terms of the Agreement, including any documents incorporated therein by reference, when it would not cancel Plaintiff's service upon Plaintiff and the Class's request.

62.     Defendants breached the terms of the Agreement, including any documents incorporated by reference therein, when it failed to honor the security monitoring equipment warranty to Plaintiff and the Class.

63.     Under Missouri law, good faith is an element of every contract. Good faith is also mandated by the Uniform Commercial Code, which covers banking transactions. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.

64.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

65.     Defendants abuse their discretion in their own favor—and to the prejudice of Plaintiff and other customers—(1) by promising to provide new and updated equipment, and not providing new and updated equipment;  (2)  by continuing to bill Plaintiff and Class Members for Security Services even though it knows that it is not providing security services for Plaintiff and Class members; (3) upon information and belief, by failing to disclose to clients, during the high pressure phone calls, with an automatic renewal provision in their agreement that their contract will automatically renew for only 12 months if they do nothing, but if they enter into a new contract, they will be entering into a 60-month contract; (4) by interpreting the contract such that a customer who is not receiving services, and therefore stops paying the bill, is unable to cancel the Agreement without being required to pay 90% of the remainder of the contract due plus all past due invoices for services (not received) and late fees and interest, which is an illegal penalty and can be approximately $4,000.00+ dollars; (4) and for other reasons that discovery will uncover.

66.     This is an abuse of the power that Defendants have over Plaintiff and the Class, is contrary to Plaintiff's and the Class Members' reasonable expectations under the Agreement, and breaches Defendant's implied covenant to engage in fair dealing and to act in good faith.

67.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may

consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

68.     Defendants have breached the covenant of good faith and fair dealing in the contract through its policies and practices as alleged herein.

69.     At the time of Defendant's breaches Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Contract.

70.     At the time of Defendant's breaches, Plaintiff and members of the Class have performed all the obligations on them pursuant to the Agreement including any documents incorporated by reference therein.

71.     Plaintiff and members of the Class have sustained monetary damages as a result of each of Defendant's breaches.

### COUNT II
### UNJUST ENRICHMENT
### (PLAINTIFF AND THE CLASS)

72.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Petition as if fully set forth herein.

73.     To the detriment of Plaintiffs and the Class, Defendants have been, and continue to be, unjustly enriched as a result of its wrongful conduct alleged herein.

74.     Plaintiff and the Class conferred a benefit on Defendants when Plaintiff paid Defendants money for equipment and/or services that were not received.

75.     Plaintiff and the Class conferred a benefit on Defendants when Plaintiff paid Defendants because they could not cancel.

76.     Plaintiff and the Class conferred a benefit on Defendants when Plaintiff paid

Defendants money for security services that were not received because of their security systems were no longer functional.

77.     Defendants unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits which, under the circumstances, would be unjust to allow Defendants to retain.

78.     Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendants as a result of its inequitable conduct as more fully stated herein.

**COUNT III**
**THE MISSOURI MERCHANDISING PRACTICES ACT**
**MO. REV. STAT. § 407.010, ET SEQ.**
**(PLAINTIFF AND THE CLASS)**

79.     Plaintiff hereby incorporates by reference the preceding allegations as if fully set forth herein.

80.     The Missouri Merchandising Practice Act, MO. Rev. Stat. § 407.020, et seq. ("MMPA") outlaws unfair and deceptive acts and practices.

81.     Specifically, the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, states in relevant part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice. […] Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

82.     Missouri regulations define "unfair practice" pursuant to the MMPA as any practice that "[o]ffends any public policy as it has been established … by the Federal Trade Commission … or [i]s unethical …. [and] [p]resents a risk of, or causes, substantial injury to consumers." Mo. Code Regs. tit. 15, § 60-8.020.

83.     Defendants are each a "person" within the meaning of the Missouri Merchandising

19

Practices Act, Mo. Rev. Stat 407.010(4).

84.      The MMPA defines "merchandise" as any objects, wares, goods, commodities, intangibles, real estate, or services. Mo. Rev. Stat. § 407.010. Thus, the purported home security program that the Defendants advertised and/or sold to its customers is "merchandise".

85.      Defendants' actions in the "advertisement" or "sale" of a home security system are unfair in violation of the MMPA because these actions are unethical.

86.      In addition, it violates public policy as it has been established by the Federal Trade Commission.

87.      In addition to Defendant's practices and/or actions being unfair, Defendant's practices and/or actions in the advertisement or sale of its services are also "misrepresentation(s)" and/or a "omission(s) of material fact(s)" in violation of the MMPA as more fully described herein.

88.      Missouri regulations provide that "[a] seller shall not make a representation or statement of fact in an advertisement that is false or has the capacity to mislead prospective purchasers." Mo. Code Regs. tit. 15, § 60-7.010(1).

89.      Missouri regulations further provide: "It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which they are made, not misleading." Mo. Code Regs. tit. 15, § 60-9.090.

90.      Missouri regulations further provide: [...] (3) Omission of a material fact is any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her; (4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1., RSMo. Mo. Code Regs. tit. 15, § 60-9.110.

91.     Specifically, Defendant, itself or by and through an agent, commit a "unfair" or otherwise unlawful practice under the MMPA by engaging in one or more of the following actions or failures to act:

a.      Knowingly offering, selling, leasing, or renting security monitoring system equipment and services to Plaintiff and the Class Members that is defective or that does not otherwise work, operate, or function;

b.      Collecting, charging, requesting, or billing for any fee, charge, surcharge, cost, or expense to Plaintiff and/or Class Members for services provided during any time period when the Plaintiff and/or Class Members' account was not functioning or was inactive, suspended, terminated, or was not being monitored by a home security system – including when the security monitoring equipment and/or service was not functioning or otherwise did not continue to provide security monitoring services.

c.      Promising to provide security monitoring services to Plaintiff and the Class and failing to provide those services.

d.      Moreover, Safe Home (or its third-party contractors) regularly tests its consumers' home security systems to determine if it is properly functioning and capable of sending signals to the central monitoring station. Even when Safe Home knew or should have known that a consumer's system was not properly sending signals to the central station, it continued to bill, renew, and collect debts on those accounts.

e.      Using high pressure sales tactics to enroll Plaintiff and the Class Members into entering a contract;

f.      Failing to disclose to clients with an automatic renewal provision in their agreement that they do not have to agree to a new 60-month contract to continue to receive services;

g.      Failing to disclose to clients with an automatic renewal provision in their agreement that their contract will automatically renew for only 12 months if they do nothing, but if they enter into a new contract, they will be entering into a 60-month contract.

h.      Failing to inform Plaintiff that Defendants would not provide security monitoring service for the duration of the 60-month security monitoring service period;

i.      Promising to provide new security monitoring equipment to Plaintiff and the Class Members if they enter an Agreement and failing to provide the new security monitoring equipment.

j.      Failing to disclose that Defendants would not provide new security monitoring equipment when the Agreement was entered into;

k.      Failing to honor any warranties provided by Defendants to Plaintiff and the Class Members;

l.      Failing to timely cancel Agreements when Plaintiff and the Class Members request cancellation;

m.      Ignoring consumers attempting to cancel their agreements and misinforming consumers of their rights.

n.      Assessing and/or charging a penalty to Plaintiff and the Class Members who ask to cancel their service.

o.      Threatening to put a lien on Plaintiff's home if he did not bring his account up to date by paying for services not rendered or if he did not buy out his contract plus previous bills overdue.

92.      Defendants' conduct was objectively unfair and/or otherwise unlawful under the MMPA and was likely to deceive and/or confuse reasonable consumers under the circumstances and was a material fact that a reasonable consumer would attach importance to when reviewing an

advertisement and/or entering into a contract with a security system product and/or service provider. This fact would influence a reasonable consumer choice of action when determining whether to sign a contract regarding security system products and/or services.

93.     Defendant's conduct was objectively unfair and/or otherwise unlawful under the MMPA and was likely to deceive and/or confuse reasonable consumers under the circumstances and was a material fact that a reasonable consumer would attach importance to when reviewing an advertisement or entering a contract with a security system product and/or service.

94.     Defendants have engaged in the unfair and unethical acts and practices as described above willfully and knowingly.

95.     Defendant's knowledge that the acts and practices enumerated above are unethical, unfair, omissions of material facts, and/or misrepresentations within the meaning of the MMPA is stated herein.

96.     The MMPA provides for a civil action to recover damages in Mo. Rev. Stat. § 407.025, which states:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action … to recover actual damages. The court may, in its discretion, award […] to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

97.     Plaintiff purchased the security monitoring system and services for personal, family, or household purposes.

98.     These acts and omissions directly and proximately caused Plaintiff and other members of the Class to suffer an ascertainable loss.

99.     Defendants continue, to this day, to engaging in the business practices which violate

the MMPA.

100.    Injunctive relief is necessary and proper to compel Defendants to cease its violations of the MMPA alleged herein.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, demands judgment against Defendants as follows:

A.     A determination that this action is a proper class action for compensatory, consequential, and statutory damages as alleged herein;

B.     For pre-judgment interest from the date of filing this suit;

C.     For reasonable attorney's fees and expenses;

D.     For all costs of this proceeding;

E.     Restitution of all fees paid to Defendants;

F.     A preliminary and permanent injunction enjoining Defendants from continuing to take the unfair, deceptive, illegal and/or unlawful action as set forth in this Petition;

G.     Initiating collection communications with consumers with respect to any debt more than twice in a seven-day period by phone or text on home or cell phones, and more than twice in a thirty-day period on any other number;

a.     Misrepresenting the terms of its contracts to consumers, including, without limitation, contract provisions related to consumers' cancellation rights and the time period during which the consumer was enrolled with Safe Home.

2.     Requiring that Defendant:

a.      Provide service within fifteen (15) days following a service request from a consumer. If the consumer's system is non-functional, and if Defendants are not able to provide service within fifteen (15) days upon notification of the functionality issue (including from the consumer or any third party), Defendants will provide the consumer with credit to their alarm monitoring account for the time in which the consumer's system was not functional.

b.      Undertake business practice changes such that, upon receipt of a consumer complaint, Defendants shall:

i.      Perform a complete review of the consumer's account, including the consumer's contract, account notes, payment history, correspondence, etc. in order to be able to accurately respond to the consumers' inquiry or complaint;

ii.     Provide the consumer with a reasonably detailed explanation of the contractual requirements and status of the consumer's account to respond to the inquiry, and provide copies of any and all account documents to consumers upon request;

iii.    Provide the consumer with a refund and/or debt waiver; remove negative credit reporting by Defendants; and order all of Defendants' agents to remove any negative reporting; and

iv.     Document in the consumer's account the date, subject matter, and outcome of the consumer's complaint.

c.      Revise internal business record keeping policies and processes to mandate that complete and accurate records are captured and maintained of telephone and letter collection efforts, consumer complaints, requests for cancellation, and renewals of home security monitoring agreements. Such records shall include, without limitation, a notation or recording of each incoming and outgoing consumer phone call, email, or letter sent to or received from a

consumer, the identity of the employee who made the phone communication, the time/date of the communication, and the recipients of the communication.

      d.     Establish measures to allow for the cancellation of home security monitoring agreements via email and through a web portal provided, however, that such measures may include confirming the identity of the consumer by verifying their account number, phone number, home address, and/or other personally identifying information;

      e.     Allow the following cancellation procedures for consumers with active contracts as of the Effective Date:

      i.     Consumers whose contract has not auto-renewed may cancel at any time by telephone, email, and web portal. Cancellation will be effective no more than thirty (30) days from the date cancellation was requested. Upon cancellation, consumers may be required to pay any amounts consistent with their underlying contract.

      ii.     Consumers who are in an auto-renewal period may cancel at any time by telephone, email, and web portal. Cancellation will be effective no more than thirty (30) days from cancellation. Upon proper cancellation, consumers subject to this paragraph are obligated to pay any arrearages that exist but will not accrue any additional monitoring charges or be required to pay any percentage beyond 30 days of monitoring charges.

      f.     Waive and forgive all Existing Debt of Plaintiff or the Class Members;

      g.     Cease collection, either directly or through an agent, of all Class Member Debt;

      h.     Withdraw any and all existing Collection Lawsuits regarding any Class Member Debt and refrain from filing any new Collection Lawsuits(s) regarding any Class Member debt;

i.      Direct all credit reporting agencies to which they report credit information to report

the balance as $0.00 or Paid for all Class Members Debt that indicates an outstanding, delinquent

balance.

G.      Such other and further relief as this Honorable Court finds just and proper under

the circumstances.

**JURY DEMAND**

**WHEREFORE**, as to each of the foregoing matters, Plaintiff demands a trial by jury on

all issues so triable as a matter of right.

Date:   _5/2/2023_____                        By:  ___/s/ Tiffany Marko Yiatras_____
                                               Tiffany M. Yiatras (MO Bar No. 58197)
                                               **CONSUMER PROTECTION LEGAL, LLC**
                                               308 Hutchinson Road
                                               Ellisville, Missouri 63011-2029
                                               Tele: 314-541-0317
                                               Email:   tiffany@consumerprotectionlegal.com

                                               Francis J. "Casey" Flynn, Jr.
                                               **LAW OFFICE OF FRANCIS J. FLYNN, JR.**
                                               6057 Metropolitan Plz.
                                               Los Angeles, California 90036
                                               Email: casey@lawofficeflynn.com

                                               **ATTORNEY FOR PLAINTIFF AND THE
                                               PROPOSED CLAS**