# EXHIBIT A

Office Acct #     284017

# SAFEGUARD AMERICA

1125 Middle St, Middletown, CT 06457 Tel 1-800-833-3211
## AGREEMENT FOR MONITORING AND INSTALLATION OF SECURITY SYSTEMS

1. This agreement is entered into this _____09/28/2021_____, between <u>SAFEGUARD AMERICA</u>, hereinafter referred to as "Company" and

Harold Gillenwater _____ or _____
         Name 1                                                 Name 2

Address ████████████                Saint Louis        MO     63115
        Street                              City                State     Zip

SSN# _____ DOB _____ SSN# _____ DOB _____
            Name 1                                  Name 2

hereinafter referred to as the "Client."    Phone ████████    E-mail ████████████

**2. SERVICE AND EQUIPMENT:** Company agrees to provide and client agrees to pay for service and/or equipment as described below:

**3. MONITORING:** Company agrees to provide monitoring service for a period of ___60___ months from the above date. **This agreement shall automatically renew without action by either party under the same terms and conditions for successive periods equal to twelve (12) months unless either party gives to the other at least sixty (60) days written notice, prior to expiration date, of intention to terminate this Agreement upon any expiration date. Upon renewal, service will be billed at then-current monitoring fees.**

**RENEWAL TERM:** Each renewal period shall be limited to the maximum term allowed by state law. If not limited by State law, the above terms in Paragraph 3 will apply.

**4. MONITORING CHARGES:** Monthly monitoring charge of $ _67.99_ *plus applicable sales tax.* Includes [X Extended Service Plan see 4.1 ▾] Cellular [ ] **Monthly Equipment Charge** and is payable in advance and shall be paid [× Monthly [ ] Quarterly (if EFT is declined(Section 5) an additional service charge of $3.00 per billing cycle shall apply).

**4.1 CONNECTED CARE EXTENDED SERVICE PLAN\*:**

| | Complete+  $20     [×] Complete  $10     | | I Decline Connected Care Coverage   $0     \*Service plan does not cover cameras
| | CompleteBatt  $15     | | Essential  $5

**EARLY CANCELLATION:** Client may cancel prior to completion of primary or renewal term upon receipt of ninety percent (90%) of the unpaid contract balance. All cancellation requests must be in writing.

**5. ELECTRONIC FUNDS TRANSFER (EFT) AUTHORIZATION:** The Client authorizes the Company to make EFT's from the Client's bank account for the amount of the monitoring, tax, or other alarm charges. The Client further agrees that if at any time the Client decides to discontinue the direct payment option, the client must notify the Company. The Company is not liable in any way for erroneous bill statements or incorrect debits to the Client's account and should an error occur, the Company's only responsibility is to correct it when and if it receives notice of the error from the Client. The Client further agrees that should any direct payment be returned, the client shall be liable for a $20.00 returned payment fee where permitted by law.

[ ] Check here to decline EFT Payment Option _____ Client's Signature if declined _____

Acct #: _____  Rtg #: _____  Exp Date: _____  Card#: _____

Bank Name: _____  Billing Cycle:  1     [ ] Visa  [ ] MC  [ ] AmEx  [ ] Bank/Debit/ATM Card

**6. EQUIPMENT TO BE INSTALLED  See attached Schedule A.**

**7. ADDITIONAL PROTECTION:** The need for additional protection of intrusion, fire/smoke, cellular, panic, duress, and medical emergency has been explained to the Client and the Client declines the offer to purchase additional equipment. ~~[signature]~~

**8. EQUIPMENT CHARGES FOR ADDITIONAL ITEMS:** The additional items will be billed separately from the monitoring charges at an additional monthly charge of $ _____ for a period of ___60___ months. There will be no renewal term for the equipment charges. The client may prepay the equipment charges at ninety percent (90%) of the remaining primary term of this agreement

**9. SERVICE REPAIRS TO CLIENTS SYSTEM:** : If ConnectedCare is declined, the client understands that the monitoring fee covers only the monitoring service and client agrees to pay Company for all service or repairs to the alarm system. Client hereby agrees to periodically test, at least monthly, Client's system, be aware of its operational status in accordance with the operating instructions, and request service if needed.

**10. ENTIRE AGREEMENT:** It is agreed to and understood by the parties that this agreement constitutes the entire agreement by the parties and there are no verbal understandings changing or modifying any of the terms of this agreement. This agreement may not be changed, modified or varied except in writing and signed by an authorized representative of the Company. Client hereby acknowledges that he/she has read, received a copy of, and understands this entire agreement, including the attached Notice of Cancellation.

**11. INVALID PROVISIONS:** If any of the terms or provisions of this agreement shall be determined to be invalid or inoperative, all of the remaining terms and provisions shall remain in full force and effect.

**12. YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FOR AN EXPLANATION OF THIS RIGHT.**

Written By: *Tonia Sawallich*      Client Signature: _[signature]_
       DocuSigned by:                              DocuSigned by:
       BO4B745406B943E                             872658002077241F

Written By: _____      Client Signature: _____

Approval Date: _____      Date: ___09/28/2021___
      *(For office use only)*

## READ TERMS AND CONDITIONS ON REVERSE SIDE

*License Numbers: AL 12-7391 • AZ 309201 • AR 17-40-101 Et.Seq Regulated by: Department of Arkansas State Police, 1 Police Plaza Drive, Little Rock, Arkansas 72209 • CA 7129 • CT 0180152 • DE 09-165 • FL EF20000405 • GA LVA206073 • IA AS-1800 • IL 127 001621 • MA 15842 • MD 107-1551 • MI 3601207520 • MN TS736769 • MS 15013578 • NC 1265-CSA NC ASLB 3101 Industrial Dr, Suite 104, Raleigh NC 27609 Tel 919-788-5320 • NJ 34BX00013300 • NV 0002335123 • OR-230807 • OK AC440819 • PA PA081785, registered by The Bureau of Consumer Protection Tel 1-888-520-6680 • RI 7625 • SC BAC 13325 • TN 1841 • TX B16661 (Regulated by The Texas Department of Licensing and Regulation, P.O. Box 12157, Austin, TX 78711, 1-800-803-9202, 512-463-6599; website: www.tdlr.texas.gov) • UT 10256706-6501 • VA 11-7938 • WY LI80070 • District of Columbia 602516000002*

DocuSign Envelope ID: 4d23BCAF0A7023-98EBCEF7A0B31F

## Schedule A.

| Item/Component | QTY | RETAIL PRICE | TOTAL PRICE | MONTHLY CHARGE |
|---|---|---|---|---|
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| | | $ | $ | $ |
| Warranty | | | | $ |
| Cellular | | $ | $ | $ |
| Installation Charge | | $ | $ 0.00 | $ |
| Sales Tax | | $ | $ | $ |
| Total Equipment and Installation Charges | | $ | $ 0 | $ |

I have read and agree to the equipment and pricing listed above _Hunt_ (Clients Initials)

losses, demands, and expenses arising from any death or injury or any other harm to any person whether caused by negligence of the Company, its officers, agents, employees, or any other cause which results in any way from the failure on the part of the Company to perform any of its obligations or from the failure of the System to operate properly.

14. **LIMITED WARRANTY.** Except as specifically set forth hereinafter, Company shall not be obliged to provide services of any type to the Client for the benefit of the Client. If Client wishes the System to be serviced by the Company beyond the limited warranty and the standard warranty periods, such Agreement shall be separately negotiated by the parties. The Agreement does not cover damage or service resulting from accidents, pre-existing equipment. Client understands that the Alarm System may not work with equipment used by other Alarm Companies or Monitoring Centers. Acts of God, alterations, misuse, tampering, neglect or trouble and due to power failure or batteries, ordinary maintenance due to wear and tear, and any cause beyond the control of the Company. Company does not warrant that the System cannot be defeated, bypassed or compromised, or that it will always operate. At the Company's option a fee may be charged for unnecessary service created by the Client. Any part of the System installed under this Agreement which proves defective in material or workmanship within ninety (90) days of the date of completion of the installation will be repaired or replaced with a new or functionally operative part with no cost to the Client for materials or labor. Service under this warranty is available by simply contacting the Company, 1125 Middle Street, Middletown, CT 06457 Tel 800-831-5211.

15. **COMPANY NOT AN INSURER AND LIQUIDATED DAMAGES.** It is understood and agreed: That the Company is not an insurer. Then insurance, if any, shall be obtained by the Client; that the payments provided for herein are based solely upon the value of the services set forth herein and are unrelated to the value of the Client's property or the property of others located on the Client's premises; that the Company makes no guaranty or warranty, including any implied warranty of merchantability or fitness that the equipment or services supplied will avert or prevent occurrences or the consequences there from which the System is designed to detect or avert. Client acknowledges that it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the failure to perform any of the obligations herein, or the failure of the System to properly operate with resulting loss to the Client because of, among other things: a) The uncertain amount of the value of the Client's property or the property of others kept on the premises which may be lost, stolen, destroyed, damaged, or otherwise affected by occurrences with which the System is designed to detect or advert; b) The uncertainty of the response time of any police or fire department, should the police or fire department be dispatched as a result of a signal being received or an audible device sounding; c) The inability to ascertain what portion, if any, of any loss would be proximately cause by the Company's failure to perform or by failure of its equipment to operate; d) The nature of the service to be performed by the Company. Client understands and agrees that if the Company should be found liable for loss or damage due to the failure of the Company to perform any of the obligations herein, including, but not limited to installation, maintenance or service or the failure of the System to operate properly, in any respect whatsoever, the Company's liability shall be limited to five hundred ($500.00) dollars as liquidated damages and not as a penalty and this liability shall be exclusive, and that the provisions of this section shall apply if loss or damage, irrespective of cause or negligence, active or otherwise, of the Company, its agents, assigns, or employees. If Client wishes the Company to assume a limited liability in lieu of the liquidated damages as hereinabove set forth, Client may obtain from Company a limitation of liability by paying an additional monthly service charge to the Company. If the Client elects to exercise this option, a rider shall be attached to this Agreement setting forth the terms, conditions, and the amount of the limited liability, and the monthly charge. Such rider and additional obligation shall in no way be interpreted to hold the Company as an insurer.

16. **COMMUNICATION TO AUTHORITIES.** The Client understands that if a digital communicator is installed under this Agreement, it uses standard telephone lines as the transmission mode of sending alarm signals. Client also understands that the Company does not receive signals when the transmission mode is, or becomes, non-operational and that the signals from the digital communicator cannot be received if the transmission mode is cut, interfered with, or otherwise damaged. The Client furthermore understands that the Company assumes no liability for failure of the Client's System as a result of the transmission mode becoming non-operational.

17. **COMPANY'S RESPONSIBILITIES.** Client acknowledges and agrees that company's sole responsibility upon receipt of a medical emergency signal transmitted from the panel is to telephone the medical assistance providers as directed by Client. Client understands and agrees that company and representatives are hereby released from all liability due to active or passive sole, joint or several negligence of any kind or degree of company or representatives which Client, or anyone claiming through Client, in any way might or could claim against company or representatives based upon, arising or from, in connection with, resulting from, related to or as a consequence of company's or representative' failure to contact or improper dispatch of medical assistance providers. If Company receives an alarm message for any transmission from the panel from a person on the premises or electronically from the System prior to notifying the Authority, Company will not notify the Authority. Company will instead attempt to rescind the notification. If the Center reasonably believes that an emergency condition does exit, it will try to telephone the Authority or other emergency personnel and the first available person on the emergency call list that Client gives Company to use, unless the Authority has adopted either a non-response policy or requires physical verification of the alarm before responding. In such event, the Center will not initially notify the Authority and shall only attempt to notify Customer or Customer's designated representative. If Client or Client's representative physically inspects Client's premises and advises the Center that an actual emergency condition exist, the Center will attempt to notify the Authorities.

18. **INTERRUPTION OR DELAY OF SERVICE.** The Company assumes no liability for delays in installation or interruption of services due to strikes, riots, floods, fires, acts of God or any causes beyond the control of the Company. The Company will not be required to supply service to the Client while interruption of the service due to any such cause shall continue.

19. **THIRD PARTY INDEMNIFICATION.** Client agrees to and shall indemnify, defend and hold harmless the Company, its employees and agents for and against all claims, lawsuits, and losses which claim and/or lawsuit is brought or loss sustained by parties and entities other than the parties to this Agreement/herein referred to as third parties). This pro-ision shall apply to all claims, lawsuits, or damages caused by the Company's negligent performance, whether active or passive and to all claims based upon defects in design, installation, maintenance, monitoring, operation or non-operation of the Alarm System, whether those claims be based upon negligence, active or passive, warranty, or strict or product liability on the part of the Company, its agents, servants, or employees. This Agreement by Client to indemnify the Company against third party claims as hereinabove set forth shall not apply to losses, damages, expenses resulting in injury or death to third persons, which losses, damages, expenses, and liability are solely and directly caused by the acts of the Company.

20. **SUBROGATION.** Client hereby releases, discharges and agrees to hold the Company harmless from any and all claims, liabilities, damages, losses or expenses arising from or caused by any hazard covered by insurance by insurance in or on the premises of the Client whether said claim is made by Client, his agents, or insurance company or by any other parties claiming under or through Client. Client agrees to indemnify the Company against, defend and hold the Company harmless from any action for subrogation which may be brought against the Company by an insurer or insurance company or its agents or assigns including the payment of all damages, expenses, costs and attorney's fees.

21. **CANCELLATION DUE TO CATASTROPHE.** This contract may be canceled without notice at the option of the Company, in case the Company's central station, connecting wires or equipment within the Client's premises are destroyed by fire or other catastrophe, or so substantially damaged that it is impractical to continue service and may likewise be cancelled at the option of the Client, in the event the Client's premises are to destroyed or seriously damaged.

22. **WARNING AND TESTING OF EQUIPMENT.** Smoke detectors, panic buttons, medical pendants, and other electronic components operate off A.C. (electric) or battery power. If batteries become dead or electric power is lost, smoke detectors and other components will not operate and the alarm will not sound or communicate to the central station. The System and all components should be tested by the Client at least twice monthly through to the central station to insure the System is functioning. If the Client discovers malfunctions or detects explanation on System testing, he should contact the Company's service department for immediate service. The Company assumes no liability for periodic testing of the System.

23. **FAILURE TO MEET PAYMENT.** In the event of a failure to meet a scheduled payment of any of the charges due and payable on this Agreement, the remainder of this Agreement, including interest of 1% per month (12% per year) and attorney's fees accrued thereon, will be accelerated and become immediately payable in full.

24. **DEFAULT.** If any one or more of the following events shall occur, then to the extent permitted by law, the Company shall have the right to exercise any one or more of remedies set forth below:
EVENTS: 1) Failure to pay any installment due; 2) Client and/or its Guarantor becomes insolvent or files for Bankruptcy protection (voluntary or involuntary); 3) A receiver, trustee, conservator or liquidator is appointed on behalf of the Client or Guarantor under any Federal or State Law; 4) Client's breach of any other section of this Agreement and fails to remedy said Breach within 10 days after breach; 5) Client enters into a new Agreement with another Alarm Company for services at the contracted premise before this Agreement's expiration date.
REMEDIES: If this Agreement shall be breached by the Client or if the Client shall be in default as set forth above, the Company shall have the option to: 1) Declare immediately due and payable any unpaid balance, including interest and late Charges; 2) Without demand or legal process, demand the Client return the equipment. If Client does not voluntarily return equipment, Client authorizes Company to enter the premise and remove equipment; 3) Bring action for collection of: damages, expenses, expenses of repossession, if any, cost of storage, shipping, removing said equipment, reasonable attorney's fees, court costs, and interest; 4) declare immediately due the full retail price of all equipment installed; 5) Disconnect services without notice. If Client asks Company to reconnect services after services are disconnected, Client agrees to pay company, in advance, then prevailing reconnect fees.
All remedies of the Company are cumulative, and are in addition to any other remedies provided by the law. The election of one remedy shall not be deemed a waiver to any other remedies nor shall it preclude the Company from electing any other remedy concurrently. No failure or delay on the part of the Company to elect a remedy shall be deemed a waiver nor shall it modify the Agreement.

25. **LATE CHARGES.** In the event that the Client shall fail to pay any installment under this Agreement within thirty days of its due date, the Client hereby agrees to pay a $10 late fee per month.

26. **ASSIGNEES/SUBCONTRACTORS OF COMPANY.** Company shall have the right to assign this Agreement to any third party person, firm or corporation without notice to Client and shall have a further right to subcontract any installation and/or services, including monitoring, which it may perform. Client acknowledges that this Agreement, and particularly those paragraphs relating to the Company's disclaimer of warranties, maximum liability, limitation of liability, and third party indemnification limitation on lawsuits, venue, and waiver of Jury Trial, inure to the benefit of and applicable to any assignees and/or subcontractors of the Company, and they bind Client with respects to said assignees and/or subcontractors with the same force and effect they bind the Client to the Company.

27. **INCREASE IN SERVICE FEES.** You acknowledge that the services fee is based upon existing federal, state and local taxes and other third-party charges. Company shall have the right, at any time, to increase the services fee to reflect any additional Governmental fees such as increased taxes, licenses, permits, or fees which Company may incur or which may be charged to Company by any utility or governmental agency relating to the services Company provides and Client agrees to pay the same. In addition, Company may increase the services fee for any amount after any period of one year.

28. **INSTALLATION OF THE SYSTEM.** Customer warrants that Customer has full authority from the owner and/or other person in control of the premises to permit the installation and operation of the System. Customer has approved the location of where the Panel, control panel, keypads, audible devices, and all devices that will be installed. If telephone utility services or cables are necessary for the installation and operation of the System, Client will provide them at Client's expense. Client has affirmative duty to inform Company, prior to beginning installation, of every location at the premises where Company should not (because of concealed obstructions or hazards such as pipes, wires or asbestos) enter or drill holes. Unless so notified, Company will determine where to drill holes and place equipment. Company will take reasonable precautions to avoid concealed obstruction, but have no means of determining with certainty if they exist. Any cost to repair pipes, wires or other obstructions, and any resulting damaged walls, ceilings, floors or furnishings shall be Client's sole expense and responsibility. If asbestos or other health hazardous material is encountered during installation, Company will cease work until Client has notified Client, at Client's sole expense, obtained clearance from a licensed asbestos removal or hazardous material contractor that the continuation of work will not pose any danger to Company personnel. In no case shall Company be liable for discovery or exposure of hidden asbestos or other hazardous material. After Company completes the System, Client and Company's representative will inspect it. If any items are missing or not properly installed, Client will advise Company in writing within ten (10) days, otherwise the System will have been accepted by Client.

29. **FALSE ALARMS & PERMITS.** Client agrees that Client and others using the System, will use it carefully so as to avoid causing false alarms. Severe weather or other forces beyond Company's control can cause false alarms. Client will pay any false alarm fine(s), penalty or fee that is charged against Client, and if a false alarm fine, penalty or fee is charged to Company by any governmental agency, Client will pay Company for the charge. Client further agrees to make Company aware of any permits required in Client's jurisdiction, whether for Alarm System or Building Permits, and Client agrees to pay the price of those permits.

30. **CHANGES TO THE SYSTEM.** If Client or any governmental agency or insurance interest wants Company to change the System described herein, or change it after it is installed, Client agrees to pay Company's standard parts and labor charges for such changes. Client agrees that Client has chosen the System and Client understands that additional or different protection may be available for a higher price.

31. **CHANGES IN LAW.** Client understands that Client's jurisdiction may require a visual verification before dispatching. If Client's jurisdiction requires visual verification, Client agrees to pay for additional services needed to ensure compliance.

32. **LIMITATION ON LAWSUITS; VENUE; WAIVER OF JURY TRIAL.** Both Company and Client agree that no law suit or any other legal proceeding connected with this Agreement shall be brought or files more than one (1) year after the incident giving rise to the claim occurred. Each party hereby irrevocably agrees that any suit, action or other legal proceeding ("suit") arising out of or from, in connection with or as a result of this Agreement shall be brought exclusively in the State Courts or in the Courts of the United States located in the District or County where Company's principal place of business is located. Each party consents to the exclusive jurisdiction and venue of each such court in any such suit and waives any objection that it may have to jurisdiction or venue of any such suit. Unless prohibited by law, suit loss is brought by either party with respect to this Agreement shall not be heard before a jury. Both parties hereby waive any right to a jury trial. Client waives any right to counterclaim.

33. **INFORMATION AND PRIVACY.** Client understands and agrees that in conjunction with employee training, quality control and the provision of services, Company may monitor and/or electronically record video and audio related to monitored activity at Client's location and to telephone communications with Client regarding Client's account as well as conversations with Client, emergency services providers, and law enforcement personnel. Further, Client understands that privacy cannot be guaranteed on telephone, cable and computers systems, and Company shall not be liable to Client for any claims, lost, damages or costs which may result from a lack of privacy experienced. Client consents to Company a) using information about Client's account to fulfill Client's location (collectively, "information") to administer services, offer Client new products or services, enforce the terms of this Agreement, prevent fraud and respond to regulatory and legal requirements, b) provide information, including information contained on Client's emergency information in Company's database, to law enforcement or fire service personnel for the purpose of providing services hereunder or in response to a subpoena or other such legal process, and c) using and storing customer information and statistics that do not include information that identifies Client personally. Except as required to provide the services that Client has selected, Company will not otherwise monitor Client's premises.

34. **TITLE.** Title to all equipment and material shall remain at all times in Company until initial period of this Agreement expires.

35. **ACCEPTANCE OF INSTALLATION.** Client hereby acknowledges and agrees that any error or omission in the installation of the System must be brought to the attention of Company in writing within five (5) days after the completion of installation; otherwise, the installation shall be deemed accepted by and satisfactory to Customer.

36. **TRANSMISSION/SIGNAL LINES.** A monitored System includes a Panel that sends signals to the Center over Client's regular telephone service, and/or cellular service or long-range radio. When System is activated, Client will be unable to use telephone to make other calls (such as calls to the 911 emergency operator), and therefore Client wishes to have System connected to a second telephone line connected to alarm System. If Client's telephone service is criminally attacked, tampered with, is out of order, placed on vacation status or otherwise not working, signals cannot be transmitted and the center will not know the telephone service problem. The use of DSL, BPL, VoIP or other broadband or Internet-based telephone service may prevent the System from reliably and successfully transmitting alarm or other signals to the Center after it is installed or at any time in the future, and/or interfere with the telephone line-seizure of the System. Client agrees to notify Company if Client installs or intends to install DSL, VoIP, BPL or other broadband or Internet service. Client agrees to test signal transmission with the center immediately after installation of the above mentioned services and agrees to periodic testing thereafter. Action on an intrusion alarm may be suspended for a maximum of 60 seconds pending the receipt of a Cancel/Abort Signal. Action on a report/supervisory, trouble, A/C failure or low battery alarm may be suspended for a maximum of 60 minutes pending receipt of a restore signal. Company is not responsible or liable for notification to client of low battery or any loss of power.

37. **WAIVER OF CLASS ACTION.** Client waives any right to assert any claims against Company, on a representative or member in any class or representative action, except where such waiver is prohibited by law as decreed by a court of law to be against public policy. To the extent the Client is permitted by law or a court of law to proceed with a class or representative action against Company, the parties agree that: (i) the Client shall not be entitled to recover attorneys' fees or costs associated with pursuing the class or representative action (not withstanding any other provision in this agreement); and (ii) the Client will not submit a claim or otherwise participate in any recovery secured through the class or representative action.

38. **CONSENT TO AUDIO AND VIDEO RECORDING; CONSENT TO CALLS/TEXT MESSAGES.** YOU CONSENT TO THE AUDIO AND OR VIDEO RECORDING AND/OR MONITORING OF ALL CALLS OR COMMUNICATIONS BETWEEN CLIENT AND COMPANY. IN ADDITION, BY SIGNING THIS AGREEMENT, CLIENT PROVIDES COMPANY WITH EXPRESS WRITTEN CONSENT TO CONTACT YOU VIA CALL, TEXT, OR VIDEO FOR SALES AND/OR OPERATIONAL PURPOSES AT THE TELPHONE NUMBER PROVIDED ON THIS AGREEMENT, AND/OR ANY SUBSEQUENT TELEPHONE NUMBERS THAT CLIENT OBTAINS. Company may use technology including pre-recorded messages and/or automatic telephone dialing systems to contact you. Consent is not required to make a purchase from Company. Message and data rates may apply. Any future amended waiver of consent shall only be made in writing directly to Company at the address provided in this Agreement.

39. **RENEWAL PERIODS.** Each renewal period shall be limited to the maximum term allowed by state law. If not limited by State Law, each renewal period shall be defined by section three (3).

40. **ACKNOWLEDGEMENT.** Client acknowledges that this Agreement shall not take effect until Company has received a Client's satisfactory credit report. Customer hereby authorizes release of credit information to the company and/or its assignees. Neither Company nor its contractor shall be obligated to provide monitoring service until it has received: i) a fully executed copy of this Agreement, ii) Client's call list, abort code, and notification instructions, iii) Client's initial payment, iv) an alarm permit if required by Client's jurisdiction, and v) valid test signals from Customer's System.

DocuSign Envelope ID: 4d74978d-ccf1-ad5f



*SECURITY SYSTEMS, INC. DBA*

# SAFEGUARD AMERICA

1125 Middle St, Middletown, CT 06457 Tel 1-800-833-3211
**AGREEMENT FOR MONITORING AND INSTALLATION OF SECURITY SYSTEMS**

# *WAIVER AND DEFERRED BILLING AGREEMENT*

**The undersigned, in consideration of the engagement of Safeguard America to provide monitoring and other related services for the security system I own, agree as follows:**

- I represent and warrant that I am the homeowner and am responsible for the security system located at the address indicated below.

- I understand that as of the date indicated below I am signing a new __60__ month monitoring agreement and that during that period my monthly rate will not increase.

- I acknowledge that my billing with Safeguard America will be deferred for the next ____9__ month(s).

- I understand that Safeguard America is not affiliated with, nor has purchased or taken over my current alarm monitoring company.

- I understand that _Tonia Sawallich_ (representative) is not affiliated with and is not a representative of my current alarm monitoring company.

- I understand that Safeguard America is not responsible for canceling my current alarm monitoring company, and that termination of any prior agreements concerning the security system must be done in accordance with the terms of the agreements.

- I acknowledge and agree that the representative at no time stated or implied that _____ (my alarm company) has gone or is going out of business.

Customer Address ████████████ _____

_Saint Louis, MO 63115_

Customer Name (print) _Harold Gillenwater_

Customer Name (sign) [signature] 67265B09207741F

Date Signed _09/28/2021_

Representative _Tonia Sawallich_ B048748498B943E

DocuSign Envelope ID: 43458DC4-F04D-4DFF-98BD-9CEF4F6093F1

| NOTICE OF CANCELLATION | | NOTICE OF CANCELLATION |
|---|---|---|
| 09/28/2021 (Date of Transaction) | | 09/28/2021 (Date of Transaction) |

<table>
<tr>
<td>

YOU MAY CANCEL THIS TRANSACTION, WITHOUT PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER, AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO **Safeguard America** AT **1125 Middle St, Middletown, CT 06457 Tel 1-800-833-3211**
NOT LATER THAN MIDNIGHT OF _____ 10/01/2021 _____.

I HEREBY CANCEL THIS TRANSACTION

_____   _____
(Date)                                  (Buyer's Signature)

_____
(Address)

_____
(City)              (State)              (Zip)

</td>
<td>

YOU MAY CANCEL THIS TRANSACTION, WITHOUT PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER, AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO **Safeguard America** AT **1125 Middle St, Middletown, CT 06457 Tel 1-800-833-3211**
NOT LATER THAN MIDNIGHT OF _____ 10/01/2021 _____.

I HEREBY CANCEL THIS TRANSACTION

_____   _____
(Date)                                  (Buyer's Signature)

_____
(Address)

_____
(City)              (State)              (Zip)

</td>
</tr>
</table>

## NOTICE OF CANCELLATION

_____ 09/28/2021 _____ (Date of Transaction)

YOU MAY CANCEL THIS TRANSACTION, WITHOUT PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER, AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO **Safeguard America** AT **1125 Middle St, Middletown, CT 06457 Tel 1-800-833-3211**
NOT LATER THAN MIDNIGHT OF _____ 10/01/2021 _____.

I HEREBY CANCEL THIS TRANSACTION

_____     _____
(Date)                                      (Buyer's Signature)

_____
(Address)

_____     _____     _____
(City)                                   (State)                      (Zip)

---

## NOTICE OF CANCELLATION

_____ 09/28/2021 _____ (Date of Transaction)

YOU MAY CANCEL THIS TRANSACTION, WITHOUT PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

IF YOU CANCEL, ANY PROPERTY TRADED IN, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT OR SALE, AND ANY NEGOTIABLE INSTRUMENT EXECUTED BY YOU WILL BE RETURNED WITHIN TEN BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE, AND ANY SECURITY INTEREST ARISING OUT OF THE TRANSACTION WILL BE CANCELLED.

IF YOU CANCEL, YOU MUST MAKE AVAILABLE TO THE SELLER AT YOUR RESIDENCE, IN SUBSTANTIALLY AS GOOD CONDITION AS WHEN RECEIVED, ANY GOODS DELIVERED TO YOU UNDER THIS CONTRACT OR SALE; OR YOU MAY, IF YOU WISH, COMPLY WITH THE INSTRUCTIONS OF THE SELLER REGARDING THE RETURN SHIPMENT OF THE GOODS AT THE SELLER'S EXPENSE AND RISK.

IF YOU DO MAKE THE GOODS AVAILABLE TO THE SELLER, AND THE SELLER DOES NOT PICK THEM UP WITHIN TWENTY DAYS OF THE DATE OF CANCELLATION, YOU MAY RETAIN OR DISPOSE OF THE GOODS WITHOUT ANY FURTHER OBLIGATION. IF YOU FAIL TO MAKE THE GOODS AVAILABLE TO THE SELLER, OR IF YOU AGREE TO RETURN THE GOODS TO THE SELLER AND FAIL TO DO SO THEN YOU REMAIN LIABLE FOR PERFORMANCE OF ALL OBLIGATIONS UNDER THE CONTRACT.

TO CANCEL THIS TRANSACTION MAIL OR DELIVER A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE OR ANY OTHER WRITTEN NOTICE, OR SEND A TELEGRAM TO **Safeguard America** AT **1125 Middle St, Middletown, CT 06457 Tel 1-800-833-3211**
NOT LATER THAN MIDNIGHT OF _____ 10/01/2021 _____.

I HEREBY CANCEL THIS TRANSACTION

_____     _____
(Date)                                      (Buyer's Signature)

_____
(Address)

_____     _____     _____
(City)                                   (State)                      (Zip)

# DocuSign

## Certificate Of Completion

Envelope Id: DF734BDB24C84DB6986D9CEF70489310
Subject: Team W Contract for AR232623 Harold Gillenwater
Source Envelope:
Document Pages: 6      Signatures: 4
Certificate Pages: 5      Initials: 2
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-05:00) Eastern Time (US & Canada)

Status: Completed

Envelope Originator:
SafeHome Security
1125 Middle St
Middletown, CT  06457
docusign@myshs.com
IP Address: 50.235.116.254

## Record Tracking

Status: Original
    9/28/2021 10:09:12 AM

Holder: SafeHome Security
    docusign@myshs.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Tonia Sawallich<br>tsawallich@myshs.com<br>Security Level: Email, Account Authentication (None) | *Tonia Sawallich*<br>B04874549B8943E | Sent: 9/28/2021 10:09:13 AM<br>Viewed: 9/28/2021 10:09:25 AM<br>Signed: 9/28/2021 10:09:30 AM |
| **Signature Adoption: Pre-selected Style**<br>Using IP Address: 50.233.242.254 | | |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 5/10/2021 7:47:15 PM<br>   ID: d180c040-ca81-461b-a507-45267ced66bd | | |
| Harold Gillenwater<br>▬▬▬▬▬▬▬▬<br>Security Level: Email, Account Authentication (None) | *[signature]*<br>67265B09207741F | Sent: 9/28/2021 10:09:32 AM<br>Viewed: 9/28/2021 10:13:28 AM<br>Signed: 9/28/2021 10:14:07 AM |
| **Signature Adoption: Drawn on Device**<br>Using IP Address: 172.56.12.43<br>Signed using mobile | | |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 4/10/2020 5:18:09 PM<br>   ID: 06ae0381-0de8-423b-bd20-13c6bf8da61f | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Safe Home Security<br>signedagreements@myshs.com<br>Security Level: Email, Account Authentication (None) | COPIED | Sent: 9/28/2021 10:14:08 AM |
| **Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | | |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Team W<br>teamw_esign@myshs.com<br>Safe Home Security, Inc<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | **COPIED** | Sent: 9/28/2021 10:14:09 AM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/28/2021 10:09:13 AM |
| Certified Delivered | Security Checked | 9/28/2021 10:13:28 AM |
| Signing Complete | Security Checked | 9/28/2021 10:14:07 AM |
| Completed | Security Checked | 9/28/2021 10:14:09 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure |
|---|

Electronic Record and Signature Disclosure created on: 1/20/2016 3:19:41 PM
Parties agreed to: Tonia Sawallich, Harold Gillenwater

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Safe Home Security, Inc (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through your DocuSign, Inc. (DocuSign) Express user account. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the 'I agree' button at the bottom of this document.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. For such copies, as long as you are an authorized user of the DocuSign system you will have the ability to download and print any documents we send to you through your DocuSign user account for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign 'Withdraw Consent' form on the signing page of your DocuSign account. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use your DocuSign Express user account to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through your DocuSign user account all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Safe Home Security, Inc:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:

 To contact us by email send messages to: bret@myshs.com

**To advise Safe Home Security, Inc of your new e-mail address**

To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at bret@myshs.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..

In addition, you must notify DocuSign, Inc to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in DocuSign.

**To request paper copies from Safe Home Security, Inc**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to bret@myshs.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Safe Home Security, Inc**

To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

> i. decline to sign a document from within your DocuSign account, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
> ii. send us an e-mail to bret@myshs.com and in the body of such request you must state your e-mail, full name, IS Postal Address, telephone number, and account number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows2000? or WindowsXP? |
|---|---|
| Browsers (for SENDERS): | Internet Explorer 6.0? or above |
| Browsers (for SIGNERS): | Internet Explorer 6.0?, Mozilla FireFox 1.0, NetScape 7.2 (or above) |
| Email: | Access to a valid email account |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | •Allow per session cookies<br><br>•Users accessing the internet behind a Proxy Server must enable HTTP 1.1 settings via proxy connection |

** These minimum requirements are subject to change. If these requirements change, we will provide you with an email message at the email address we have on file for you at that time providing you with the revised hardware and software requirements, at which time you will have the right to withdraw your consent.

**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the 'I agree' button below.

By checking the 'I Agree' box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC RECORD AND SIGNATURE DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Safe Home Security, Inc as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by  Safe Home Security, Inc during the course of my relationship with you.